| | |
|---|---|
| **UNITED STATES BANKRUPTCY COURT** | <u>NOT FOR PUBLICATION</u> |
| **SOUTHERN DISTRICT OF NEW YORK** | |

---------------------------------------------------------------x

In re:

       ARKADY MALAKHOV,

                     Debtor.

---------------------------------------------------------------x

VADIM PRISIVKO,

                     Plaintiff,

        - against -

ARKADY MALAKHOV,

                     Defendant.

---------------------------------------------------------------x

Chapter 7

Case No. 05-47081 (ALG)

Adv. Proc. No. 07-01716 (ALG)

## <u>POST-TRIAL MEMORANDUM OF OPINION</u>

A P P E A R A N C E S:

LOWENSTEIN SANDLER PC
Attorney for Plaintiff, Vadim Prisivko
  By:   Steven M. Hecht, Esq.
1251 Avenue of the Americas
New York, NY 10020

SATTERLEE STEPHENS BURKE & BURKE LLP
Attorney for Defendant, Arkady Malakhov
  By:   Howard G. Seitz, Esq.
230 Park Avenue, Suite 1130
New York, NY 10169

**ALLAN L. GROPPER**
**UNITED STATES BANKRUPTCY JUDGE**

       Grigoriy Shcherbakovskiy ("Shcherbakovskiy") filed this adversary proceeding on May 31, 2007 against the above-captioned debtor, Arkady Malakhov ("Defendant"), seeking a revocation of a discharge previously granted. Vadim Prisivko was substituted as the plaintiff ("Plaintiff") on January 14, 2009. A trial was held on July 22-23, 2010,

on two principal issues: first, whether the motion to revoke the discharge was timely filed; and second, whether the discharge should be revoked on the ground that it was fraudulently obtained. Upon the findings of fact and conclusions of law set forth below, the Court holds that the motion to revoke the discharge is timely under § 727(e) of the Bankruptcy Code (the "Bankruptcy Code") but that revocation of the discharge under § 727(a)(4) should be denied.

## **Background**

On October 14, 2005 (the "Petition Date"), Defendant filed a voluntary petition (the "Petition") for bankruptcy under Chapter 7 of the Bankruptcy Code. Defendant filed the Petition *pro se* immediately prior to the effective date of the 2005 amendments to the Bankruptcy Code. Defendant's schedules listed assets totaling only $1,350 and liabilities of $325,470. In addition to credit card debt of $181,945, his liabilities included $22,850 to his mother, $15,000 to his aunt, Inna Malakhov, and $7,567 to Shcherbakovskiy. The case appears to have proceeded as a routine "no asset" case, and Defendant received a discharge, which was entered on the docket on June 2, 2006.

Approximately one year later, on May 31, 2007, Shcherbakovskiy, in his capacity as a creditor, moved to re-open Defendant's bankruptcy case in order to revoke the discharge on the ground of an alleged violation of § 727(a)(4)(a) of the Bankruptcy Code. Shcherbakovskiy alleged that Defendant, having failed to provide him with proper notice of his bankruptcy case, had fraudulently concealed his ownership of shares of Cenergie Corporation Public Limited Company ("Cenergie PLC"), an Irish company.[1] In October

---

[1] In his Pre-Trial Memorandum dated March 31, 2010, Plaintiff complains of other improprieties in Defendant's bankruptcy filings, such as a failure to disclose debt owed to Shcherbakovskiy and ZeTek (as defined below), and a failure to disclose his managerial positions in his Statement of Financial Affairs. For the reasons set forth below, these issues were not raised in the complaint, and they are not properly before this Court in this proceeding.

2

2008, Shcherbakovskiy transferred and assigned all of his claims to Plaintiff. *See* Def. Tr. Ex. D-17.

Defendant has contested Plaintiff's claims of fraud and further asserts that Plaintiff's complaint, filed on May 31, 2007, was time barred because (i) it was not filed within the one year statutory period, and (ii) Shcherbakovskiy received adequate notice of the Petition and should have raised his claims before the discharge order was entered.

The relevant facts, as established at trial and in the documentary record, are as follows.

**I.  Facts Relating to Notice of the Bankruptcy to Shcherbakovskiy**

Defendant listed Shcherbakovskiy in the Petition as a creditor in the amount of $7,567 for a "personal loan" and gave Shcherbakovskiy's address as 52 Sand Hill Road, Weatogue (Simsbury), Connecticut 06089 (the "Simsbury Address"). The Simsbury Address is the home of Yelena Malakhov who, in addition to being a creditor in the Chapter 7 case, is Defendant's mother and Shcherbakovskiy's aunt. Although Shcherbakovskiy admitted that he had used the Simsbury Address as his U.S. mailing address in the past, it is uncontroverted that he did not reside at the Simsbury Address at the time the bankruptcy notices were sent. *See* Shcherbakovskiy Test., Trial Tr. 126:20–25, 127:1-3 (July 22, 2010). Defendant conceded that he did not believe that Shcherbakovskiy was physically present at the Simsbury Address at the time he listed the Simsbury Address in the Petition; he thought that Shcherbakovskiy was living in Russia. *See* Malakhov Test., Trial Tr. 19:1–6 (July 22, 2010). Defendant contends, nevertheless, that providing notice to Shcherbakovskiy at the Simsbury Address was sufficient because Shcherbakovskiy used that address from time to time, and Defendant believed that

Yelena Malakhov was forwarding Shcherbakovskiy's mail to him. *See* Malakhov Test., Trial Tr. 36:13–22 (July 23, 2010).

In addition to providing for notice of the Petition to be sent to the Simsbury Address, Defendant also claims that notice was sent to Val Mandel ("Mandel"), who had acted as Shcherbakovskiy's attorney from time to time, starting in 2002. Mandel testified that he had no recollection of receipt of the notice, and Defendant did not provide evidence to the contrary. *See* Mandel Test., Trial Tr. 9:3–8 (July 23, 2010). Mandel is not listed on the Petition or in an affidavit of service.

Shcherbakovskiy testified that he did not receive notice of Defendant's bankruptcy until April 2007, ten months after Defendant's discharge was granted, when his mother, Inna Malakhov, relocated from the United States to Russia carrying mail that had been sent to the Simsbury Address. *See* Shcherbakovskiy Test., Trial Tr. 127:4–13, 128:1-6 (July 22, 2010). Upon receipt of the Petition, Shcherbakovskiy contacted Mandel and filed the instant adversary proceeding.

## II. Facts Relating to Defendant's Omission of the Cenergie Shares in the Petition

On Schedule B-12 of Defendant's bankruptcy petition, which purports to list all of Defendant's property, Defendant did not list his ownership of any shares of Cenergie PLC, the Irish company. The relevant facts are as follows.

Defendant had been previously employed as the general manager of several energy companies founded by Nicholas Abson ("Abson"), including ZeTek Power, PLC ("ZeTek"), located in Russia, and Cenergie Corporation ("Cenergie Corp."), located in the United States. *See* Malakhov Test., Trial Tr. 99:10–21 (July 22, 2010). After the demise of ZeTek in 2001, several former ZeTek employees, including Defendant, joined

Abson's new venture, Cenergie Corp. Around November 2002, Abson created a trust containing shares of Cenergie Corp. to be held for the benefit of former ZeTek employees, including Defendant (the so-called "Gift Shares"). *See* Def. Tr. Ex. 12. The Gift Shares originally consisted of shares in Cenergie Corp., but, after the formation of Cenergie PLC, Abson apparently substituted shares of that company, and the Gift Shares were re-issued as shares in Cenergie PLC.

Defendant concedes that he received the Gift Shares in Cenergie PLC but testified that, on September 29, 2003, he sold his entire beneficial interest in the Gift Shares to Sigfurd Hogsbro ("Hogsbro"), another Cenergie PLC shareholder, for $10,000. *See* Malakhov Test., Trial Tr. p. 33-51 (July 22, 2010). Defendant supported the sale by producing a one-page agreement with Hogsbro providing for the sale of the shares (the "Gift Share Sale Agreement"), and he also produced a Western Union wire receipt of $1,000 from Hogsbro, which he asserted was the first installment of the purchase price. *See* Def. Tr. Ex. 6; *see* P. Tr. Ex. 10. Defendant claims that the remaining $9,000 was paid over time by means of the purchase, by Hogsbro, of meals and plane tickets for him, but these alleged in-kind payments were not supported by any documentary evidence. Defendant also admitted that he remained the record owner of the Gift Shares but testified that Abson did not want the shares to be transferred and that Hogsbro, himself a former ZeTek employee, and he both agreed not to register the sale of the Gift Shares or to otherwise alert Abson about the sale. *See* Malakhov Test., Trial Tr. 54:23 -58:8 (July 22, 2010). As a result, Defendant remained the record owner of all of the Gift Shares despite the sale to Hogsbro.

Hogsbro did not testify but he did purport to submit a sworn answer to interrogatories. Plaintiff attempted to subpoena him for a deposition in England, but he failed to appear.

Defendant continued to be employed in Atlanta by Cenergie Corp. until that company's failure; it was dissolved on July 9, 2005. *See* Def. Tr. Ex. 10. Defendant testified at trial that Abson had earlier promised to issue him shares of Cenergie Corp. as compensation for his employment as Cenergie Corp.'s general manager, but that this never happened. *See* Malakhov Test., Trial Tr. 83:15 -74:19 (July 22, 2010); *see also* Def. Tr. Ex. 11. After Cenergie Corp.'s failure, Defendant became unemployed, and his Chapter 7 petition followed in October 2005.

## Discussion

### I. Timeliness

The complaint alleges that Defendant fraudulently failed to disclose assets in violation of 11 U.S.C. § 727(a)(4)(A). A creditor may request the revocation of a discharge only within one year after the discharge is granted, s*ee* 11 U.S.C. § 727(e)(1), and only if the "discharge was obtained through the fraud of the debtor, and the requesting party did not know of such fraud until after the granting of such discharge." 11 U.S.C. § 727(d)(1). Defendant contends that Plaintiff's action is time-barred because Shcherbakovskiy was sent notice of the Petition and therefore knew or should have known that Defendant had not disclosed ownership of the Gift Shares before the discharge was granted. Therefore, the Court must first address whether Shcherbakovskiy

had sufficient notice of the bankruptcy filing so as to be precluded from seeking to revoke the discharge pursuant to 11 U.S.C. § 727 (d)(1).[2]

### A. Defendant's Notice to Shcherbakovskiy

In order to ensure that notice is properly served, the Bankruptcy Code and Rules mandate that a debtor file a schedule listing the names and addresses of known creditors. 11 U.S.C. § 521(1); Fed. R. Bankr. P. 1007(a)(1). In the instant matter, Defendant claims that he used the Simsbury Address, where his mother, Yelena Malakhov—Shcherbakovskiy's aunt—lived, because it was Shcherbakovskiy's "last address of record known by me." *See Defendant's Answer* at ¶ 6. Defendant further asserted that he "did not know [Shcherbakovskiy's] address outside the country at the time of filing the petition, nor did [Shcherbakovskiy] provide me with any alternative address." *Id.* There is no question that Shcherbakovskiy had used the Simsbury Address for various purposes through the years.[3] Defendant, however, admitted that he believed Shcherbakovskiy resided in Russia on the Petition Date.

Noticing a creditor at an old address without a reasonable attempt to determine the correct address is not adequate. *In re Najjar*, No. 06-10895 (AJG), 2007 WL 1395399 at *3 (Bankr. S.D.N.Y. 2007). Defendant asserted that he believed his mother was forwarding mail to Shcherbakovskiy in Russia, but he took no steps to verify this,

---

[2] The Defendant also contends that the complaint is untimely because it was brought exactly one calendar year after the date of Defendant's discharge, and the statute provides that a complaint seeking to revoke a discharge under § 727(d)(1) must be brought <u>within</u> one year after such discharge is granted. There is no substance to this claim. While the order granting the Defendant's discharge was dated May 31, 2006, the order was not entered and did not become effective until June 2, 2006. In the instant matter, it is the effective date, and not the date the order was dated, that is relevant, and the complaint was filed within one year from the discharge.

[3] Shcherbakovskiy's use of his aunt's Simsbury Address has figured importantly in other litigation Shcherbakovskiy has brought in this country. *See Shcherbakovskiy v. Da Capo Al Fine, Ltd.*, 490 F.3d 130 (2d Cir. 2007), *vacating* on other grounds a default judgment against Shcherbakovskiy by Judge Brieant and, on remand, the decision of Judge Patterson, dated March 23, 2010, finding that Shcherbakovskiy was a U.S. citizen domiciled in Connecticut when he filed his complaint in 2003. *See Shcherbakovskiy v. Seitz*, No. 03-1220 (RPP), 2010 U.S. Dist. LEXIS 27164, at *11 (S.D.N.Y. 2010).

and his mother did not in fact forward the mail to Russia for almost a year. Accordingly, Defendant had no basis for concluding that notice delivered to the Simsbury Address would reach Shcherbakovskiy in a timely manner, and he was obligated to undertake additional steps to ensure that Shcherbakovskiy received adequate notice of the Petition.

Defendant also contends that notice was sent to Mandel, Shcherbakovskiy's attorney in connection with various matters, and that this was sufficient. There is no evidence that such notice was ever sent, and, at trial, Mandel denied having received it. In any event, notice served on a creditor's attorney may impute knowledge to the creditor only "so long as there is a nexus between the creditor's retention of the attorney and the creditor's claim against the debtor." *In re Najjar*, 2007 WL 1395399 at *4 (*internal citations omitted*); s*ee also In re Savage*, 167 B.R. 22, 26 (Bankr. S.D.N.Y. 1994). Prior to the commencement of this adversary proceeding, Mandel did not represent Shcherbakovskiy in connection with Defendant's bankruptcy. *See* Mandel Test., Trial Tr. 15:1–25, 16:1–2 (July 23, 2010). Even assuming, *arguendo*, that Mandel received notice of the Petition, a mailing to Mandel would not have been sufficient to put Shcherbakovskiy on notice in this case.

Since he failed to receive timely notice of the Petition, Shcherbakovskiy's complaint was timely because he did not know of the alleged omission before the discharge was granted. We therefore turn to the question whether Defendant's failure to include the Gift Shares in his Statement of Financial Affairs constituted a knowing and fraudulent false oath or account.

## II. Debtor's Bankruptcy Petition

Plaintiff contends that Defendant should be denied a discharge under § 727(a)(4)(A) of the Bankruptcy Code based on Defendant's failure to disclose

8

ownership of the Gift Shares in his Chapter 7 filing. Section 727(a)(4)(A) provides that "[t]he court shall grant the debtor a discharge, unless . . . the debtor knowingly and fraudulently, in or in connection with the case . . . made a false oath or account." Defendant filed the required schedule of assets and liabilities as required by § 521(a)(1). The Petition and its accompanying schedules are deemed to be statements made under oath for the purposes of § 727(a)(4)(A). *In re Gannon*, 173 B.R. 313, 320 (Bankr. S.D.N.Y. 1994).[4] Therefore, knowingly and fraudulently submitting false information on these schedules would result in a denial of a discharge under § 727(a)(4).

In order to obtain an order revoking Defendant's discharge, Plaintiff must prove, by a preponderance of the evidence, that the "(1) Debtor made a statement under oath, (2) such statement was false, (3) Debtor knew the statement was false, (4) Debtor made the statement with the intent to defraud creditors, and (5) the statement related materially to the bankruptcy case." *In re Gollomp*, 198 B.R. 433, 437 (S.D.N.Y. 1996). As noted above, statements made in the schedules of a bankruptcy petition are considered statements made under oath for purposes of § 727(a)(4)(A), and the first factor has been satisfied. There is also no real dispute that ownership of the shares would be material. Since Defendant remained the record owner of the Gift Shares, there is a basis to claim that he should have disclosed this fact and, therefore, that his SOFA contained an omission and was false. An omission as well as a false affirmative statement is sufficient. *See Forrest v. Bressler (In re Bressler)*, 387 B.R. 446, 460 (Bankr. S.D.N.Y. 2008). The primary issue is whether the Debtor's omission of the shares was knowingly false and made with intent to defraud creditors.

---

[4] *See also* this Court's opinion in *In re Eva Gabor*, No. 05-18719, 2009 Lexis 3110, at *21-22 (slip op.) (Oct. 8, 2009)

While Defendant admits that he was the record or "nominal owner" of the Gift Shares, his primary defense is that beneficial ownership had been transferred to Hogsbro. *See* Malakhov Test., Trial Tr. 32:1–9 (July 22, 2010). Defendant testified that he did not list the Gift Shares on his SOFA because he believed that the question required only a listing of stocks or interests where he had beneficial ownership, and at trial he denied any intent to defraud his creditors. *See* Malakhov Test., Trial Tr. 32:1–20 (July 22, 2010). Considering the record as a whole and having had the opportunity to observe Defendant's testimony at trial, the Court finds Defendant's testimony credible. Defendant's testimony is also supported by the Gift Share Sale Agreement and evidence that Hogsbro made an initial cash payment to Defendant at the time the agreement was executed. Moreover, the failure to transfer record ownership was explained because neither Defendant nor Hogsbro wanted Abson to learn of the sale. While Hogsbro may have evaded appearing at a deposition, there is no evidence Defendant procured his unavailability.

Plaintiff attempted to impeach Defendant through the use of Defendant's testimony at a pretrial deposition held on December 21, 2004 in connection with *Shcherbakovskiy v. Seitz*, 2010 U.S. Dist. LEXIS 27164. In that case, Defendant testified that he stood to gain from any appreciation in value of his "ownership in Cenergie." *See* Malakhov Test., Trial Tr. 49:4–19 (July 22, 2010). Plaintiff contends that this statement, made after the Gift Share Sale Agreement was executed, was an acknowledgement by the Defendant that he retained a beneficial interest in the Gift Shares. It is clear, however, that Defendant's 2004 testimony related to his expectation that he would receive shares in Cenergie Corp., which he believed were owed to him as compensation for his services on behalf of that company, an expectancy unrelated to the Gift Shares. *See* Transcript of Deposition; P. Tr. Ex. 13, p.17-line 3-22; *see also* Malakhov Test., Trial Tr. 51:15–23

(July 22, 2010).[5] The (non-gift) shares in Cenergie Corp. were never received, and Cenergie Corp. had failed by the Petition Date, in October 2005. *See* P. Tr. Ex. 11:140.

In order to show that the omission of assets in Defendant's schedules was made with fraudulent intent, Plaintiff would have to demonstrate that Defendant's omission was for the specific purpose of perpetrating a fraud and not due to his carelessness. *See In re Gollomp*, 198 B.R. at 438. Actual common law fraud must be shown. *See Baron v. Klutchko* (*In re Klutchko*), 338 B.R. 554, 567 (Bankr. S.D.N.Y. 2005)). "The elements of a common law fraud claim are (1) a false representation, (2) fraudulent intent, or *scienter,* (3) intent to induce reliance, (4) justifiable reliance and (5) damage." *Weiss v. Alicea,* 230 B.R. 492, 500 (Bankr. S.D.N.Y. 1999). Moreover, in determining whether a discharge should be denied under § 727, the record "must be construed strictly against those who object to the debtor's discharge and liberally in favor of the bankrupt." *In re Cacioli,* 463 F.3d 229, 234 (2d Cir. 2006). Upon consideration of the record as a whole, and the high burden of proof imposed on those who seek to revoke a debtor's discharge, the Court credits the testimony of Defendant and finds that Plaintiff has not carried his burden of establishing that Defendant knowingly made a false statement under oath. *See also In re Gollomp*, 198 B.R. at 437 (finding no instance of fraud when a debtor failed to list ownership of a boat due to erroneous belief that it had been repossessed).

### III. Other Issues

Defendant submitted a letter on September 30, 2010 requesting that the Court order Shcherbakovskiy or Plaintiff's attorney to pay Defendant's legal fees because Plaintiff's legal claims are allegedly frivolous and champertous. With respect to the issue

---

[5] Indeed, the passage in the deposition followed a question relating to Defendant's salary at the "company." As he was still working for Cenergie Corp. at the time of the deposition and never worked for Cenergie PLC, the record is clear that the testimony did not concern the Gift Shares.

of legal fees, there is no basis for departing from the "American Rule," which obligates each party to pay its own counsel fees and litigation expenses. *See e.g., Oscar Gruss & Son, Inc. v. Hollander,* 337 F.3d 186, 199 (2d Cir. 2003) (noting that the "English Rule" on shifting attorneys' fees does not apply in U.S. court proceedings absent a clear contractual agreement by the parties). Section 523(d) allows the court to award reasonable attorney's fees when a creditor, who has challenged the dischargeability of a consumer debt, was not substantially justified, but this provision does not apply to instant matter. 11 U.S.C. § 523(d).

The claim of champerty in the transfer of the claim is also of no substance. Shcherbakovskiy testified that the claim was transferred for consideration, and there was no evidence to the contrary. New York law provides that the transfer of a claim is champertous only in narrow circumstances where a party purchases a claim "merely as a vehicle for obtaining costs." *Trust for Certificate of Holders of the Merrill Lynch Mortgage Investors, Inc. v. Love Funding Corp.,* 591 F.3d 116, 120 (2d Cir. 2010), quoting *Trust v. Love Funding*, 13 N.Y.3d 190, 199, 890 N.Y.S. 2d 377, 918 N.E.2d 889 (2009). No substantial evidence was adduced that the transfer in this case was made for this purpose.

Finally, at trial Shcherbakovskiy claimed that Defendant had failed to list in the schedules a debt to him in excess of $760,000, which was in addition to the $7,567 debt actually listed in the schedules. Defendant testified credibly that he believed that this additional liability had been satisfied by the surrender of collateral that had secured the debt. In any event, although the alleged debt clearly preceded the Chapter 7 filing, Shcherbakovskiy never raised this issue in the complaint and never moved to amend the

complaint to assert the additional claim, and therefore the issue is not properly before the Court.  *See Wright v. Ernst & Young LLP*, 152 F.3d 169, 178 (2d Cir. 1998).

## CONCLUSION

Defendant shall settle a judgment in his favor on five days' notice.

Dated: New York, New York
       January 7, 2011

                              */s/ Allan L. Gropper*
                              UNITED STATES BANKRUPTCY JUDGE